Mr. Soderstrom May it please the Court, Counsel, Mr. Wilkinson, your son Ernest, and my dear wife, Thora, good morning to all. My name is Reed Soderstrom, and I represent Wilbur D. Wilkinson. In an abuse of discretion requiring reversal, Federal District Court Judge Daniel Hovland asserted original jurisdiction over a tribal court case entitled Wilkinson v. Interplus. Could I interrupt you? I have a important inquiry that I'd like to have addressed at our outset here. It's come to my attention. There's been an order entered below on summary judgment. Is that accurate? I knew when was filed. We had responded with the briefing and, Your Honor, that is news to me. I knew it was pending prior to walking up to the podium this morning. But you weren't aware that it's been issued? I was not. Okay. Doesn't that essentially moot this appeal on a preliminary injunction if the court has already resolved the dispute by summary judgment? The appropriate remedy for that is an appeal in that case, or in the same case, but an appeal of that order. This was an interlocutory appeal requiring a de novo review. It was an abuse of discretion based on jurisdiction, and if the lower court never had jurisdiction to start with, I believe this court can still proceed and make that finding, if the facts and evidence find that to be the case. I still think it's right before this court in determining the jurisdiction, and that is one of the issues before us. I think our presidents are to the contrary, but go ahead and proceed. Thank you, Your Honor. In 2011, Wilbur Wilkinson sought an accounting for 119 Peak North Dakota LLC oil and gas leases, all located within the exterior boundaries of the Fort Berthold Indian Reservation, in which he had an overriding royalty interest. That was in 2011. Despite repeated requests, Interplus refused to provide an accounting for the 119 leases, refused to provide a copy of the purported Peak Interplus merger agreement. Interplus refused to provide an explanation of what happened to any of these leases. Therefore, Wilkinson filed an action in tribal court of the three affiliated tribes to compel Interplus to provide an accounting of the leases. Interplus, in response, filed a motion to dismiss for lack of jurisdiction in tribal court. The tribal court has not ruled on this motion. After Wilkinson filed the tribal court action, 30 days later, Interplus filed in federal court seeking a preliminary injunction against Wilkinson and the tribal court. Wilkinson filed a special appearance and motion to dismiss, never submitting voluntarily to the jurisdiction of the federal court. The Honorable Judge Hovland held a hearing in August 2016, and at the hearing, Interplus provided no witnesses, no testimony, no exhibits, and no Peak Interplus merger agreement, giving Interplus the leases. In an abuse of discretion, Judge Hovland asserted original jurisdiction over the case, denied Wilkinson's motion to dismiss for lack of jurisdiction, and granted Interplus's motion for a preliminary injunction. And Wilkinson and the tribal court ordered Wilkinson to deposit royalty monies in the approximate sum of 2.7 million dollars. The lower court asserted jurisdiction over this matter based on forum selection clauses. However, the lower court made that finding of forum selection prior to weighing any data phase factors allowing this injunction. Before any forum selection clause should be considered, it must be determined whether Interplus even has standing, standing to impose the forum selection clause absent of showing a BIA approval. And I think that's at the heart of this issue. It's not just a simple overpayment issue. It is an issue of whether or not this lease that Interplus purports to own, and is the owner of these leases, that has not been ratified by the BIA. It has not been approved by the BIA. But isn't this suit just about the money that was deposited? Is this, is that going to have to be resolved to determine where this money goes? Ultimately, it is a, it is a, an issue that will be resolved, and we believe, for the reasons I'm about to explain, the tribal court is the best way to start the resolution of this process. There's a reason, there's a value to the leases. There's a reason why Interplus says it merged with Peak. There's a value there somewhere, and that's in the mineral royalty leases themselves. They're worth a lot of money. Now what we know, what we know about these forum selection clauses that the lower court relied upon, the settlement agreement, the overriding royalty interest, the division order, they were all subject to this lease, and I'll call it a BIA lease. The BIA was expected to review the lease, review any changes in the lease, which is what has occurred here, and the BIA, as we know, has fiduciary responsibility. The settlement agreement, all the documents, are, are, are, refer and are subject to the underlying lease with the BIA. It's referenced multiple times. The lease even considers Peak's inability to obtain government approval. It was addressed in the lease, it was foreseeable, and it was ignored by Peak and or Interplus. The lease is at the heart of this issue. It's not an overpayment issue, but it comes back to the lease, and why is the lease so important? On the Fort Berthold Indian Reservation, there is a story of poverty to affluence because of oil, especially when oil was high. Every single mineral acre on Fort Berthold Reservation is, is held by a lease through the BIA, a four-page lease. That lease mandates BIA oversight, and just a historical look at American history. Counselor, I understand you're, you're giving some background here, but we, we have much of that background available to us as, as, as well in terms of the history involved, but what is the entitlement to the retention of the overpayment? It seems to be undisputed that there was an overpayment. That issue hasn't been addressed specifically. There's been no evidentiary hearing, and again, we do not believe. Doesn't it go to your likelihood of success on the merits? That's one of four factors. I understand, but it seems to be the weightier of the data phase factors. We believe that the, the more important issue, Your Honor, is, is exhaustion of tribal remedies, jurisdiction of the tribal court, self-determination, and, and Your Honor, I understand the historical analysis you're well aware of, but with the BIA supervision and fiduciary responsibility exercised on these leases, because what's happening is these leases are initially purchased from the Indians at a low price. They're being sold, assigned, conveyed, flipped for very high numbers when, when oil is high, especially, and the Allotte Indians is not sharing in that wealth. Whether or not there's a clawback for that exchange of wealth is not before us today, but what is, and what's in the lease, is that the BIA, through its, its provisions set forth explicitly in the lease, they have the power so that oil companies are not just capturing mineral acres and holding them and waiting for them to appreciate. Instead, they can put a drill commitment in these leases, and they can say, if you're going to exchange this money, if you're going to buy these leases, then we're going to impose upon you a drill commitment date, a window of time to do something with these leases, and, and if you're not going to do that, the lease may be invalid. The BIA has to approve the leases. All of these settlement agreements with foreign selection clauses are subject to the lease. Interplus did not deal with Wilkinson in any of these documents. They're a successor in interest. They're not entitled to have standing to come before federal court. Not, not when there is, and I think that chronology is important here. What we have is Wilkinson inquiring, as part of the appendix, Wilkinson inquiring about the merger, about an accounting of his mineral acres back in 2011. There's no response from Interplus. Wilkinson is not knowing what's going on until 2016. Interplus said, we overpaid you. Wilkinson said not, Wilkinson said, not so fast. We're going to tribal court. Mind you, tribal court had already ordered that this money be held in a trust fund and be kept secure, and to date, the money has all been accounted for and returned to Interplus. But at the heart is a much bigger issue. Does Interplus even have standing to assert a foreign selection clause? We assert no. But if the court, only at the point where a foreign selection clause would be deemed valid, then can the analysis of the data phase factors be considered. But we don't get that far. If the BIA approves the lease, and only if they approve, then we go to the data phase factors. How did this get raised to the district court? It seems in looking at the district court's order, there's just really one line about this particular argument, I think. Isn't there, saying there's no merit to the defendant's argument that the merger of Peak North and Interplus somehow invalidated the settlement agreement? I think the underlying court may have been much more blunt. They called it ridiculous, the argument. And I don't see that. When the heart of the issue is the lease, and all of the foreign selection documents that are referred to by Interplus are subject to the lease in question. So there was, was there a hearing on this particular motion? There was one oral argument, one hearing in district court in August of last year, only regarding the injunction, whether or not they were entitled to the injunction. And where this is going, whether it be through this appeal of the injunction, or the final order, regardless of those issues, there's more coming. And this BIA lease is going to be before you again within two to three years. These leases must be reviewed and approved by the BIA before anything else can go forward. There's a ton of money changing hands here. A ton. And what we're addressing is not the mathematical formula of 2.7 approximately of what Interplus alleges it overpaid. There's so much more at stake here. Counselor, you're in your rebuttal. You can continue if you like, or you can reserve. If, Your Honor, if the BIA had approved the lease, we could go to an analysis of whether or not the forum selection clause should apply, absent exceptional circumstances in Atlantic Marine case of the U.S. Supreme Court. There are exceptional circumstances here, the lease being one of them that I've talked about for the last ten minutes. After that, you've got the issues that you've all dealt with, tribal sovereignty, self-determination, comedy. Remember, this was all filed in tribal court prior to Interplus doing anything. And it was there where Interplus filed a motion to dismiss that hasn't been ruled upon. And only then, if they got past the exceptional circumstances of Atlantic Marine regarding the forum selection, then we can weigh the data phase factors. There was a process here that needed to be followed, but the lower court jumped right into we have original jurisdiction over Indian minerals, over an Indian, over a pending Indian case, and that should not have happened. And you have the power to reverse that at this level, in my opinion, and send it back to tribal court, holding everything in abeyance until then. I'll reserve the remainder of my time for rebuttal. Thank you. Thank you, sir. Mr. Cohen. Good morning, your honors. I think it'd be good to start with a procedural background in this case, because I think there may be some confusion. So I'd like to review that, because both of you had questions about that, which I don't think were fully answered. Enterplus filed a motion for preliminary injunction, which was granted. This appeal is only about that order. Enterplus then filed a motion for summary judgment on the issue of whether or not the overpayment should be returned. That motion for summary judgment has been granted. This panel may recall that there was a second notice of appeal for dismiss, and which Wilkinson's counsel did not oppose. And that second appeal, which was directed at the summary judgment motion, with respect to the overpayment, was dismissed. There's a second motion for summary judgment pending before the court right now to basically convert this preliminary injunction into a final injunction and finish the case. And your honor, I heard you say- Well, I heard you say at the beginning of Mr. Satterstrom's argument that summary judgment has been granted. And I wasn't sure if you were referring to the motion that we filed fairly recently, which I did not believe has been ruled on yet. Or if you were referring to the earlier summary judgment with respect to the overpayment, which again has been ruled on. So if there's been a new order that's come down in the last, I guess, 24 hours, I'm unaware of it. No, no. Okay, then there has not been an order on a permanent injunction yet. That's being briefed and it's pending before the court, but there's been no ruling on that. The only summary- No final judgment in the district court. The case is still pending. Correct. So this appeal, you think, should go forward because there's no final judgment that would moot this one. Yeah, I think an interlocutory appeal of a preliminary injunction is proper. And I think that's the only thing we're really here to talk about today. In response to a question you asked, counsel, about whether or not the issues about the BIA approving all these leases and everything was raised below. I didn't think so, but I just briefly went through their response to our motion for preliminary injunction in the record, which is at the appendix starting at about page 237, and the answer is no. The arguments that were presented in opposition to our motion for preliminary injunction were basically arguments going to tribal exhaustion and tribal sovereignty, not about standing. And so we, in our reply, addressed the exhaustion issues, but not the standing issues. Those issues have since been raised in the subsequent motions that aren't before you today. Subsequent motions at the district court. Yes, the motion for summary judgment with respect to the overpayment raised the standing issue. That's been decided by the district court. It's not before us today, but that was decided. And then it's been raised again in the briefing that's going on right now with respect to a permanent injunction, but that hasn't been decided yet. So is Interplus a successor to Peak North? Yes. Is that the answer to the standing question? Yeah, Interplus acquired Peak North. And under Delaware law, Interplus is a Delaware corporation, and North Dakota law, if you acquire a company, and then once they owned it, they merged it into Interplus, then they own all the rights, all the liabilities. There was never an assignment, which is what I believe Mr. Satterson's argument is directed at. There was never an assignment from Peak North to Interplus. Interplus just acquired all the stock of Peak North, and what came with that were the leases. And with respect to standing, I would just point out that Interplus, it's undisputed that Interplus has made over at least $3 million in payments to Wilkinson. We believe some of that is overpayment, a substantial portion of that. In tribal court, Wilkinson has alleged in the original tribal court suit that predated this suit. He alleged that not only is he entitled to the overpayment, but he's entitled to even more money based on the settlement agreement. So on the one hand, he's saying that the settlement agreement entitles him to even more payments than what we consider to be a $3 million overpayment. But at the same time, the forum selection clause that he agreed to in that same agreement doesn't apply. So he's happy to get the benefit of the settlement agreement, but not the burdens of the settlement agreement. With respect to forum selection clauses in general, as the appellants point out, in Atlantic Marine Construction versus US District Court, the Supreme Court said, when parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the party's settled expectations. A forum selection clause, after all, may have figured centrally in the party's negotiations and may have affected how they set money and other contractual terms. It may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, the interest of justice is served by holding parties to their bargain. Wilkinson's argument in this appeal is that somehow this falls into the category of a most unusual case. He makes that argument, but he can't support it with anything. He doesn't identify any case in which the tribal exhaustion doctrine or tribal sovereignty controlled over a forum selection clause. The public interest in tribal self-determination and sovereignty does not relegate contract law to the trash heap, especially where the tribal member, as in this case, has expressly waived tribal sovereignty in three separate forum selection clauses. And I think this case is controlled by another Eighth Circuit opinion, FGS Constructors, Inc. versus Carlo, where the same issue, that's the only case we've been able to find, where the court addresses the interplay between tribal sovereignty or the tribal exhaustion doctrine and a forum selection clause. And in that case, the court held that the forum selection clause controls, because the tribal member expressly waived tribal sovereignty. Same exact situation is here. We think that is the controlling law. There's no other case that they've cited which pits a forum selection clause against the doctrine of tribal sovereignty. We think that really is determinative of this issue. And again, with respect to standing, I've already raised the issue that Wilkinson in the tribal case, and this is at page 257, I believe, of the appendix, is the tribal complaint where he is seeking a declaration that Interplus has not fully paid its obligations to Wilkinson under the settlement agreement, the same agreement that contains the forum selection clause. So CIT Corporation versus Hetland, North Dakota Supreme Court case, says that the hold that a plaintiff in this case should take a conditional sales contract and be entitled to all of its benefits, but not be burdened with any of its obligations, would be a rank injustice. And we think the same is true here. How long has the case been pending in the tribal court? Mr. Satterson said that this lawsuit was filed 30 days after that suit was filed. So I'll accept that, and I don't know exactly, but maybe a year or so. I think that's all I have for the court. If the court has any questions, I'm obviously happy to answer them. Okay, thank you. Thank you, Mr. Cohen. Mr. Satterstrom, your rebuttal. To answer your question, Justice Kelly, it's been pending quite a while. Back in 2011, you'll notice on the pleadings there's an attorney, Irvin Lee, listed on the appeal. He's part of this action. He's a party to this action. This action regarding royalty payments has been pending since 2011, and it was pursuant to that tribal court order that all this money, all these royalties were held. It was only after the fact, and after Wilkinson was trying to get some information about Interplus, several years later, Interplus decides to surface, and a form selection clause that it didn't sign. It has no right, your honor, to assume North Dakota law should apply, or Delaware law, or even Texas. We're talking about the sovereign nation of the Fort Berthold Indian Reservation. That lease must apply, and there's a good reason for it, because in state law, most states, my understanding is that the surface owner is always subservient to the mineral owner. And that can't be the case on Fort Berthold. That's why BIA supervision and their fiduciary duty must be exercised before Interplus can step in and say, we have standing. We're going to assert this form selection clause. Now, in terms of what we allege in our tribal court allegations against Interplus, yeah, it was notice pleading. We wanted an accounting back in 2011, and you deserve to give that to us. FGS constructors, in reference to form selection clauses and other cases. I believe that if the BIA approved this lease, and this merger, or whatever Peak and Interplus did, if they get that far, there are exceptional circumstances why form selection shouldn't be applied. And I believe that this is, if it's not a case of first impression, it's certainly distinguishable from FGS constructors. We have tribal royalties, value of this lease, lease unapproved. We've got people that haven't been dealing at arm's length. Someone who comes in late after the fact asserting form selection. All of these issues have not been dealt with before at the federal level. And that is why I think a reasonable path forward at this point in time is to, if you can't outright reverse, a reasonable path option would be to, I think they did that in National Farmers Union, hold everything in abeyance. And let the tribal court go forward, rule on Interplus's motion to dismiss. See if Interplus will ultimately provide their agreement with Peak. But there's been, the facts are clear that there is no record of Interplus getting any approval from the BIA to hold these valuable assets it says it conveyed or received from Peak. Thank you. Thank you, counsel. The court wishes to thank both of you for your presence and the arguments you've provided to the court. The briefing that you've submitted will take the case under advisement. Thank you.